It was always a felon court where a division is now in session. The Honorable Justice Jesse G. Reyes is presiding. Everyone else, seat please. Heaton v. Fulton and Mitchell. When counsels are going to argue a matter, please approach Fulton and then stick with the move. And what party are you representing? Good morning, Your Honor. My name is Julia Rickert and I represent Donald Fulton v. Mitchell for Petitioners and Policies. Good morning, Your Honor. Paul Wosicki, W-O-J-C-I-C-K-I, on behalf of the people of the state of Illinois. Okay, a couple of housekeeping matters before we proceed with arguments. Number one, there was a supplement to the DVD, and so both sides, I believe, didn't have any objections to the court viewing the new DVD or the corrected DVD, whatever it was. That's correct. I mean, our understanding is that Ms. Rickert provided you with what we had both been working for. Okay, yeah, I just wanted to make sure it was on the record there was no objection. No objections, right? That is correct, Your Honor. All right, okay. And then also, there was a late, about 325 in the afternoon, motion presented to the court to cite additional authority, and it came from the people. Any objections? You know, I actually did not see this somehow. I don't know. Sometimes I don't get the notifications, but I didn't. Well, I'm sorry about that. Just for the record, I did receive the confirmation of service through the e-file system, so a COI case came out yesterday. A certificate of innocence case came out yesterday, People v. Hilton, and so it addresses the elements of burden proof under COI. Okay, well, since CASA didn't have an opportunity to prove the case, are you familiar with the case? I have not seen the case. Okay, so since CASA is not familiar with the case, what we'll do is we'll just limit the arguments to the authority that's already been previously provided to the court. If you'd like to, once you get an opportunity to review this case, if you want to submit it to court with another case, maybe we can consider, we'll allow that. But I don't want any extensive going back and forth, all right? So if you have an opportunity to review it, if you have another case that you want us to consider with regards to the one that was presented to us, which was... People v. Hilton. People v. Hilton, or I forget the number. It's 120, no, 122-0843. Okay? And just for clarity on the record, the decision was handed down yesterday, and the motion was filed the same day, so... Okay, I understand. All right, so 15 minutes apiece, and any time for rebuttal? I'd like to reserve five minutes. Five minutes, okay. Are you ready to proceed? Yeah. All right, thanks. Can I just grab my water bottle? Sure, yeah. All right, counsel, before you proceed, what's our standard of review here? Well, there is conflicting authority on the standard of review. There are some cases that say that it is an abusive discretion standard, such as Rodriguez. McIntosh says it's against the manifest way to the evidence standard. I think that other cases say there's not much of a difference there. You know, I think we win under either standard, certainly. I strongly believe that. And I think it's worth noting that cases like McIntosh also point out that somewhat less deference is to be paid to credibility determinations that are based on documentary evidence rather than live witnesses. Okay, let me ask you this before I ask my next question. So what about de novo review? There's authority that would permit de novo review, and I think that would be appropriate in this case. Is it the real basis for the circuit court's decision, the video statement of Mitchell? And I don't know about my colleagues, but I've reviewed it. So wouldn't it be de novo because I'm looking at it just as well as Judge Martin looked at it? Yes, certainly. Judge Martin was in no better position to assess the credibility of Mr. Mitchell's statement than anyone else who views it. It was not in court testimony subject to cross-examination or any such matter. So I think that certainly reviewing that piece of evidence, de novo, would be appropriate. So what would you argue that the standard review for us should be? I think the overall standard of review is an abuse of discretion standard. I think that standard, though, has to be applied, keeping in mind that the COI statute itself makes clear that passage of time, lack of the ability to acquire evidence at this point should be considered, and I think that that can't be lost when applying an abuse of discretion standard. And additionally, as I said, there's certainly less deference for a – Did Judge Martin review anything that we haven't been presented with? Not that I'm aware of. And have we been presented with anything that he hasn't? For example, the affidavit of Mitchell, it's not attached to your petition, right? So did he see it? Well, it was certainly part of the post-conviction record that was before him, and Anthony's repeated under oath assertions of innocence were presented to Judge Martin extensively. Whether he looked at that particular piece of paper, I am not sure, but as you may have seen on the docket, getting the record on appeal in order took several days. Where in the record on appeal is that? The affidavit is added to the record on appeal, and I can tell you exactly. It's in your conducts, right? But it's not in your – where else is it on the record on appeal to show that he actually saw that? Right. It was one of the pieces of evidence that we supplemented the record on appeal with. It was part of the trial record, part of the post-conviction proceedings, and I will have to look at which supplement that was because I think we had three different supplements of the record. It took some doing. The record as compiled by the Circuit Court Clerk's Office was pretty limited. Okay. Okay, so we have the standard set. You want to proceed with your argument? Sure. Thank you very much. John Fulton and Anthony Mitchell had no involvement whatsoever with the horrific March 2003 murder of Christopher Collazo. Absolutely none. The prosecution's entire theory, their entire story of petitioner's involvement in this murder, is based on statements that are disproved by the objective evidence. Given the limited time we have today, in addition to answering your questions, I'd like to focus on two critical points that are amply supported by the evidence. First, John Fulton's alibi is solid. Extensive video evidence shows he was miles away throughout the night of the crime, and I'll return to this point and talk about that some more.  Yes, so. Cassius doesn't say he was there. Fulton doesn't say he was there. What places him with the girlfriend in the hospital? Anthony. Yeah, Anthony. Anthony Mitchell was not with John Fulton that night. John Fulton and Anthony Mitchell didn't see each other that night. There's no record of any phone conversations between them. So you're not arguing Mitchell was part of that alibi? I'm not, but I am saying that the alibi disproves the case against Mitchell as well, because every confession involves these three young men committing this crime together. John Fulton is the one with the supposed motive. He is the one who has the car that is supposed to be the means. He is the one who is supposed to have spoken with Janita Griffin to set this thing up. It's all about John. Anthony and the other co-defendant, Antonio Shaw, were supposed to have just been hanging out outside in negative 11-degree weather and just decided to go along with John on the spur of the moment. So if John Fulton did not commit this crime, there is just no reason to believe Anthony Mitchell did, especially in light of the second big thing I want to cover is Anthony's videotaped confession, which is demonstrably false, cannot reasonably be credited. Why not? Well, there are many crucial factual errors, and this is true of the other inculpatory statements as well. So the statements, including Anthony's, describe numerous phone calls that were crucial to facilitating this murder that never happened. Just to get back to it, so are you saying that he was coerced? That he was intimidated? I think he was, yes, I believe that, and he has testified that he was. And just as Walker mentioned that she reviewed the video, I did. I did.  Well, it doesn't seem like he's under any stress or duress when he's giving his confession. And was there any finding by anybody that it was coerced or under duress that swept through motions to suppress the trial judge, and then the more recent Judge Flood, Judge Martin? Was there any specific ruling by anybody that the statement was involuntary? Well, so the way you're saying it is in the brief. Did Judge Martin make that finding? Well, I do believe Judge Martin implicitly made that finding by rejecting the State's argument that this was a voluntary confession that would have brought about Anthony Mitchell's conviction. But to go back further, it's true that the trial judge did not grant Anthony's motion to suppress, even though the court did grant Antonio Shaw's motion to suppress because Antonio Shaw had a witness that these same investigators making a false promise of leniency to Antonio that he, if he made a statement, could go home. Anthony was told the same. Anthony was told this videotaped confession happens 40 hours, almost 40 hours into his detention. Of course, he's under stress, and none of us, I trust, have been through this. I don't know how we would react in that situation. But he has testified that he was told, speak loud, keep your head up, you know, tell the story. He had been shown written accounts of this supposed crime. He had been given many details. He had been driven around town and showed this. He was told by the detectives that John Fulton was accusing him of a murder, that because John has money, he would get away with this, and Anthony would go down. And Anthony asked them, how do I help myself? What do I do? And they said, you need to make this statement, put John in it, and then that will help you. And he, you know, I think there was a lot of good cop, bad stuff, bad cop stuff going on. He reached a point where he thought, this is what I have to do to get out of this room and save myself. So he's casual because he's describing, well, he thinks that he's putting an end to his detention, and he is describing something that he did not see or participate in. So he isn't talking about it in the way you would expect him to talk about such a gruesome event. Yes, and I want to point out that murder. That's the other point. I mean, there was a gruesome conclusion to Mr. Colosso's life, right? And yet he seemed to be very calm when he was giving his confession. He wasn't there for that gruesome, and he had nothing to do with it. And I mean, I think that Anthony's demeanor, whatever we make of it, and, you know, different people react differently under different circumstances, but his demeanor, that's a subjective assessment that should not overcome all of the objective, serious problems with his confession that there's just no explanation for. I mentioned that it describes phone calls. Talk like they're finding him because Precious Griffin, we're talking to her the whole way up. She's showing us, she's telling us where to go, telling us how to find this guy. No such calls. He describes the victim getting off this bus at Foster and Rockwell. No bus. You know, these statements, including Anthony's, describe taking this very bloody body in and out of John Fulton's trunk in public places, you know, an assault on a busy public street with three young people chasing down a man with a baseball bat and taping him up and the whole works. And there is not a drop of blood in that trunk. There is not a single eyewitness to these events that are happening all over town that put John, Anthony, and Antonio there. And the statements describe the use of a baseball bat. In Anthony's, it's a metal baseball bat. In John's, it's a small wooden baseball bat because I don't think the investigators really remembered what all the details they were getting were, but the medical examiner's report suggests that a different type of weapon was used, something with like a nail sticking out of it. There are no fractures. John and Anthony have an expert saying that a baseball bat attack would cause some fractures. There's not one. And, you know, and of course Anthony's statement describes John coming and picking him up and doing these things that John could not have done, certainly could not have done at the time Anthony is talking about. And, you know, the appellate court on direct appeal said, well, people can get confused about times. Well, let me ask you this. Judge Martin, in hearing the arguments, it indicated that with regards to whether or not the defendants brought on their own convictions. Yes. So he was not totally convinced one way or another, right? So what was he referring to? Well, it's hard to tell. It's a pretty short ruling, and I'm trying to understand it as best as I can. But the state had argued that John and Anthony were not eligible for certificates of innocence because they brought about their own convictions by voluntarily confessing. Judge Martin didn't really unpack that very far, but said, I see your point. That's arguable. But in the end, I don't think that they did. And, you know, I'm not sure how else to read that other than an acknowledgment that these confessions were not voluntary in the legal sense, that they were. But he still ruled against your clients, right? He did because he said. On the innocence problem. And he never said that they were involuntary. He never said they were involuntary. I agree. That's an inference that I'm making also based on a previous comment that I have in both the opening brief and the reply where he discusses how a confession could be involuntary yet true and says that involuntariness is irrelevant in a civil proceeding. I don't agree. He never said it was irrelevant. Correct. I believe that he actually did say something along those lines. I will have to pull up the full statement before I come back up here. But he didn't talk about that in his ruling. This was an earlier point in the hearing. But it appeared that he relied on Neutral's confession, right, in his ruling. Yes, that seemed to be the main number one thing, and it seemed that it was the demeanor. Credibility. Yes, his credibility. And I think that when he then talks about, he says, well, some of the details are arguable. No, no, no. Like, there's not a single verifiable detail in that confession that the detectives didn't already know from the crime scene that is correct. Like, there's details that Anthony is, you know, filling in gaps with bits and pieces of things and things from the drive he went on with the police and the different aspects of how this is supposed to have gone down. I mean, he says, oh, yeah, there was a rag in his mouth. Well, there was a sock in his mouth. He's obviously heard, though, that there's something. Something was in his mouth, and so he's repeating these things. There's no reason a person who was there, this is less than two weeks after it happened. He would know. He would remember. Same for all of them. They would remember. They wouldn't confuse 9.30 p.m. for 1 in the morning. They wouldn't confuse, you know. How do we know that? Well, I mean, I think common sense. You know, these are, we're talking about four individuals telling a story about something that happened less than two weeks earlier. They all give extremely wrong details on super critical points and about, like, the time and all of those components and how this was set up with the phone calls. And I think it's quite clear to me that they were adopting a narrative that the police had decided on before. After talking to Marcus Marinelli, the fellow gang member who had participated in the robbery of John Fulton, they learned from him that Christopher Collazo was supposed to take a bus up to Foster and Rockwell to sell marijuana to Jameeda Griffin. And that, by the way, Jameeda Griffin had set up this robbery weeks ago where we robbed this kid. I guess he did it. And the police really never looked any other direction. So they had a timeline already. He's taking the bus up there. They have each of these people adopt this without bothering to do the basic investigative steps that were shown. Do we know how long this incident with Collazo took? Was it just 15 minutes? Was it half an hour? Was it an hour? Was it a couple of days? Do we know the length of time? Because it wasn't just one incident, but it was several incidents that brought him to his demise. So do we know over what period of time this took place? We don't know about Christopher Collazo's actual murder. I don't know. I imagine that the attack happened indoors because he's not wearing a coat and that he was then brought to this alley. Also, it was very cold out. No time of death was established. That was one of the many investigative failures in this case. But the fire was burning at 3 in the morning. I mean, it would be a question for the state, like, what exactly they're saying happened here. Did John leave the hospital and do this? And then the body was burning for several hours. Was the body in the trunk for hours? It's really never been clear. They said, we got a confession, that's good enough. And sometimes it is. But I think that what's clear is that this could not have happened during the time that John Ford was away from the hospital before he went and picked Yolanda Henderson, his girlfriend, back up again, even though that was the state's first variant trial that he had left and come back. But the timeline does not work. When you're on the far south side, just driving up, finding his friends, driving up north, finding this guy, assaulting him, taking him in and out. In some of the stories, they stop at a gas station to buy a gas can. And then going back to the south side and setting him on fire, taking his friends back, cleaning up. I mean, this would take substantial time. But I don't know exactly how long. Definitely way too long for John to have done it when he left the hospital and then came back. And I do want to talk about the idea that John could have snuck out, if that's a topic that interests everyone. Because that is a Hail Mary theory that the state introduced for the first time in rebuttal after sending an investigator at 4 o'clock that morning out to John's home. John was not even familiar with this back door. He never used it. So he couldn't tell his lawyers, oh, there's an electronic fob entry system and there would be a recording of if I had ever come in this door. He didn't know whether there was a camera or something that looked like a camera there or not. And his lawyers, they fell short here. They should have investigated this because it was the only hope the state had. Now, of course, it doesn't comport with any of the confessions that he snuck out that's never mentioned. It's implausible extremely. I mean, there's- I don't know if there was a camera there or not or what it would have shown either way, right? Don't worry. Whether he's on it or he's not on it, whether there was a camera, whether it was working. Right. Well, that's true. And this gets to the passage of time and the unavailability of evidence. We can't get that information now. We can't get the records from the electronic fob system and see what they would have shown. But what I think we can say for sure is that John Fulton would not have seen this back door as some means to sneak out. You know, if he was aware of the fob system, he would have known there's something that's keeping track here. If he saw what appears to be a camera casing, he would have not- he didn't know what the cameras in this building's security showed. It was a building with pretty good security. I mean, they had live guards and they had all these cameras. The state describes it as a luxury high rise. It's not. It's not a luxury high rise. I'm not sure what the point of that was, but it was- you know, it's a nice building. And in case anyone has this question, also, the reason John Fulton could live in a nice building like that is because John Fulton is the beneficiary of a modest trust that is the result of his mother dying of complications of his childbirth due to medical malpractice. There have been times where in trial and here where it seems to be suggested that John has money he shouldn't have. You know, there's- in the trial they talk about his new car being new and having flashy rims and then this luxury apartment. You know, he had money because of tragedy and he used that money to pay child support to his young son the entire time he was incarcerated. That is the kind of person he was. Well, we have some time for rebuttals if you just want to wrap up right now. Sure, I will stop here and see you guys. All right. Thank you. May it please the court, counsel, let's start with the standard of review. Nowhere until the reply brief did the petitioner say anything about a de novo standard of review. De novo standard of review was not asked for and it's not appropriate here. Why? Because the circuit court had to make findings of faith. It had to assess the evidence. That was its duty, its responsibility under the Certificate of Innocence or CLI statute. As such, the question on review is whether the court's decision is supported by the evidence. So whether it's irrational or done carelessly or arbitrarily. So whether you apply the use of discretion, which is often the case law, the majority of cases say, or whether you apply manifest weight of the evidence, you still have to apply a deferential standard of review because the circuit court had to make a determination, an evidentiary determination of whether petitioners proved their innocence by a preponderance of the evidence. They point to the Townsend case for the contract. Well, the de novo review may be appropriate because a review was done on the paper. But Townsend is inapposite and distinguishable. Why? In that case, the only question was a choice of law question and decided very early on in the proceedings. The question did not involve, according to the Supreme Court, any factual determinations. Rather, it was simply an application of the law to the facts as laid out in the papers. There was no determination of weight. There was no preponderance determination or anything of that sort. Plus, as the court also noted in Townsend, review of a choice of law question is a purely legal question and is generally performed de novo. Now, this is not a purely legal question. This is a question of whether the petitioners met their evidentiary burden, and the answer to that is the circuit court correctly found that they did not. In fact, if you listen carefully to their arguments, they don't claim that they have, and they can't. They presented no evidence of innocence. They presented no evidence of innocence in this case. What they've done is made, well, a closing argument in trial and raised arguments that may have been better raised on direct appeal, may have been better raised in the arguments they did or at least presented differently. But what they sit here and do is they raise the exact same arguments that they raised on direct appeal, sufficiency of the evidence, improper admission of the statements that they made, the inculpatory statements. Nowhere, nowhere in this proceeding do they argue that we came forth with affirmative evidence that establishes the petitioner's innocence in this case. Can you say it's an abuse of discretion or is it manifest weight? The weight of the case law says it's abuse of discretion. A couple of recent, one recent case, McIntosh said, well, we think manifest weight is more appropriate here. So at this point, the weight of the case law says we continue to apply abuse of discretion. Cases subsequent to McIntosh that said, well, it really doesn't, it's not required for us to resolve that issue in this case because we reached the same result under either standard. So I think McIntosh's argument is pretty compelling, personally, it makes sense. But I also think that the appellate court takes serious consideration in promulgating the abuse of discretion standard under the plain language of the act. So, and as this court has said on occasion, it doesn't matter which standard you apply, abuse of discretion or manifest weight, we end up in the same place, which is affirming the circuit court in this case. The statute is very clear. Under its express terms, and we know that from Warner and we know that from Brown, from one of the sister circuits, 2-7-2-G-3 requires proof of innocence. It's not enough to prove I'm not guilty. It's not enough to show, well, the case at trial wasn't all that solid against me. In fact, we have the Terrell case. What happened there? There, the defense conviction was overturned on appeal based on insufficient evidence. That alone was not enough to entitle him to a CLI, Certificate of Innocence. He still had to come forward under 7-1-2-G-3 and present evidence of actual innocence. It's not enough to say I'm not guilty. It's not enough to prove I'm not guilty. It's not enough to raise questions about my guilt. It is the burden of the petitioner to prove his innocence. And this goes, that has been the reading of 7-1-2-G-3 consistently by the appellate court since the statute was put in force. Counsel, don't you think that the court's ruling here was inconsistent when he said he didn't think the movements brought about their own convictions but then relied on Mitchell's credible video statement to say he wasn't convinced of their innocence? Do you find some internal inconsistency there? No. I think what the court was looking at, whatever the circuit court didn't want to deal with the issue under 7-0-3-G-4 because he was satisfied with his decision under 7-0-2-G-3. And I think it's that simple. And I think the other thing that compounds that and may have put the court off is because petitioners did what they've done here, which is raise something at the hearing that wasn't the last for raise in their petition. Nowhere in their petition, but they can look at their petition and encourage the court to do that, nowhere do they say we are entitled to a COI because our statements were coerced. Nowhere is there evidence attached to this COI demonstrating they didn't come forth with compelling new evidence that showed their statements were coerced. They litigated the coercion issue prior to trial. That decision was, they lost. That decision was affirmed on appeal. They didn't re-raise the issue in there. And they didn't re-raise the issue of post-conviction. They didn't re-raise the issue and present evidence in connection with the COI proceeding. What about their argument that, well, they weren't even there because of the inconsistency of the stories, that they weren't even there, they weren't at the incident that caused Mr. Clausen's demise, right? They're saying that the stories are all inconsistent, the time and the location and things of that nature. Right, so that's called, what their argument there is, the evidence is insufficient to establish my premise. Their argument is not the evidence conclusively shows we weren't there. They can't make that argument because they have no evidence showing they weren't there. They're saying that these so-called inconsistencies cast doubt, create doubt about whether they participated, and they've got to do more than that to obtain a Certificate of Innocence under the statute. How do you prove they weren't there? How do you prove a negative? Well, they claim they have the alibis. They needed a better alibi witness. They had Ms. Henderson testify at trial. Where was she for the Certificate of Innocence proceeding? At trial, right? The trial testimony was she came home from the hospital, she was very ill, and she slept through the night. She didn't think he left. Okay, that's fine, but it's not conclusive. Where was she to reiterate that testimony or expand on that testimony? Or someone else, how would someone else, whatever, I don't know what potential sources of evidence they had available to them were, but the statute says what it says. They have the burden of proof to come forward with evidence establishing their innocence. By a preponderance. By a preponderance, right. A civil standard for this. It's not a civil right, and I think we use it in other applications in the criminal law setting, but that's really not the point. The point is, yes, it's more likely than not, it's not the beyond a reasonable doubt standard. That's certainly true. Okay. But it's also true that the court, survey court, looks at whatever evidence they present in light of the totality of the record. And inasmuch as they presented no real new evidence, and inasmuch as the trial evidence was already deemed sufficient, even with all its inconsistencies and everything else, all the warts they've identified here are warts that were identified when the case went through the initial procedure and direct appeal, all of the warts, the warts in all, the evidence was deemed sufficient to prove them guilty of the crime charged beyond a reasonable doubt. They offered nothing to undercut that finding. And certainly, whether it's deemed, and it may not be deemed any kind of racial, to support a finding that the circuit courts review the same evidence, finding that it did not establish Petitioner's innocence by preponderance of evidence, was reasonable and not arbitrary and well thought out. The trial court found Mitchell's confession to be credible, but yet they're saying that it was involuntary, that the confession was involuntary. But they didn't prove. I mean, they're saying that. They brought forth no proof to show that it was involuntary. Did they submit any affidavits to Judge Martin about the confession being coerced or it being involuntary at that COI hearing? I believe, okay, that if we look at their, there were affidavits, very conclusory, short affidavits. I'd have to go back and look at it, but it doesn't jump out at me that they said anything about their statements other than generally saying we didn't do it, you know, we're innocent, that just a conclusory, they're like five or six sentences, affidavits. There is nothing developed in the record they present. They did not present evidence. I mean, they didn't testify at the COI hearing as to what they endured, what factors, what caused, why they believe their statement was coerced or offer some basis that their statement was coerced. So some, you know, out of court, you know, a statement, an affidavit, a conclusory statement, self-serving conclusory statement, an affidavit, how does that stand up against the prior judicial finding by a trial court and an appellate court that the statement was not coerced and properly admitted? You know, I think on a profiner's reckoning scale, the weight goes in favor of what the prior court determined because remember, the circuit court made its determination after a full-blown suppression hearing. And the appellate court had that suppression hearing record in front of it. See, I mean, this case is being approached backwards by petitioners because they can't come forward with evidence of their innocence. And the policy underlying the statute, right, the policy underlying the statute is clear. We want truly innocent persons only and only truly innocent persons to receive certificates of innocence. I think it's been described in the case law as a golden ticket. It's an IOU from the state. You walk into the court of claims and you get compensation. Now, it's my understanding someone who doesn't obtain a certificate of innocence can probably still go to the court of claims, but they're going to have to prove a claim as opposed to walking in with the golden ticket. So not everybody should get a golden ticket. A golden ticket is reserved for cases where, indeed, a petitioner is able to prove his innocence of all the offenses charged in the indictment by a preponderance of the evidence. And that wasn't done here. In fact, it really wasn't even attempted. The entire focus throughout the proceeding has been by the petitioners to look backwards and criticize the state's case at trial. We see that even right down to the very opening line of their opening paragraph of the reply brief. The state's theory has since been shown to be absurd or unsupportable or whatever. That's always been the focus. What happened? What happened? What happened? What happened in the trial court? What the evidence didn't show? We're past that. What about the fact that, and I'm going to ask you the same thing, is that when the arguments were being made, the trial court basically was somewhat unequivocal with regards to whether or not they brought on their own convictions. Kind of left the door a little open. But I think the court said something, in fact, while a compelling case can be made that they voluntarily brought about their own convictions. I don't believe that. I don't believe that they did. Compelling case, but I don't believe they did. That's equivocation. That is equivocation. So why would the court equivocate? Well, listen, I think that's a close enough call that I'm going to zero in on G3, because I don't believe, I find, I look at this, and he looked at this again and again and carefully and thoroughly, and believed this was not, this wasn't some drive-by definition or decision-making process by the circuit court. Circuit court made it very clear, did a very deep and thorough analysis of this case, and found that under 702 G3, they didn't meet their burden. And I hope it seemed to have been Mitchell's confession. Well, they had the surrounding evidence. I mean, remember, you've got the whole evidence from Griffin and everything else. You've got Filton's confession as well. But in his ruling, he didn't say that. He just focused on Mitchell's statement. In large part. In large part. Okay. He did say that. But that was reasonable. That was reasonable. He was permitted to assess that confession and to give it what weight he deserves. So unless it was fully unreasonable, unless no reasonable, rational mind could find, as the trial court did, he should be affirmed. It's a tough burden to overcome for them, and it should be because of the restricted nature of this remedy. Thank you. You want to wrap up? As we outlined in our briefing for the reasons outlined today, defendants, or petitioners in this case, did not meet their burden under the statute. Or at least that's what the circuit court determined, and it was correct for doing so. The burden was on them. They did meet it. The circuit court's denial of their CLR petitions should be affirmed. Thank you. Thank you. Any other questions? Okay. Thank you. Thank you, Your Honors. Just want to first address the arguments that were made about the standard of review and whether they've shown evidence of innocence. First, John's alibi evidence is evidence of innocence. Affirmative evidence of innocence. Evidence showing he was not there, could not have done it. But also, the standard requires that you look at all the evidence and decide whether it is more likely than not that these people are innocent. And the fact that their confessions are coerced, the fact that there is no physical evidence whatsoever, despite it being the type of crime you would expect there to be physical evidence from, no eyewitnesses, all these things do matter in determining whether it is more likely than not that John and Anthony committed this crime. The other thing is that while John and Anthony were not required to present new evidence in their COI, they did. The evidence about the backdoor monitoring was new. The appellate court, the trial court did not have this. It is a ruling that is intact and should be given some deference. Judge Ford's ruling that this is material evidence that should have been presented to the jury and might have made a difference. So that is new. Also new in the post-conviction proceeding is the officers who are involved in this case, their now-established history of misconduct of this nature. Now, there was already a hint of that in the trial court because of the involuntary confession of Antonio Shaw. But since John and Anthony's conviction, a number of things have changed. Multiple officers, most especially the polygrapher Robert Bartik, have been shown again and again in a number of cases, and civil juries have found that they fabricate confessions. This could never have happened to John and Anthony mere months after this occurred because the Illinois legislature, recognizing that the final product, the final confession, doesn't tell the whole story. You need to videotape the entire interrogation. And that is the law now for murders. And this would have made all the difference in this case. It would have made all the difference. So there was additional evidence. My opposing counsel said that Judge Martin simply didn't want to deal with the issue of whether they brought about their own convictions, so he's moving on. But he would have just said, you know, I'm not going to decide this because I'm deciding on another ground. Instead, he did address it, and I think that he made clear that he found the argument that they voluntarily confessed to be not persuasive in the end. I also want to be very clear that the issue of the confessions being involuntary was raised in the post-conviction proceedings and in the COI properly. The post-conviction judge didn't reach the issue because he decided to vacate the convictions on another ground. The state decided not to retry despite having Anthony Mitchell's videotaped confession because it won't hold up. And so that was raised in the PC. And in the COI, the initial petition presented evidence of their innocence. The state came back and said, no, no, you confessed. And then there was a great deal of discussion about these confessions being involuntary. And I will find where in the record on appeal Anthony's affidavit is found, but he also testified at the suppression hearing about how and why he came to confess and made clear that it was involuntary. So this isn't new. This isn't something that petitioners decided to argue at the last minute. The idea that Yolanda Henderson, John's girlfriend, that her trial testimony was that she just went to sleep and stayed asleep. No, she said she didn't go to sleep right away. She was sleeping near the door to avoid getting John sick with strep throat. She didn't sleep well because she was ill. He was completely normal in the morning when he was getting ready for school. She is confident that he didn't leave. There was no life testimony at the COI, but she will tell you today, and I feel I have to say this after the implication that she wouldn't, she has testified in several proceedings recently to all the same things. She's not John's girlfriend. She doesn't even, you know, have a particular affection for him. She stands by the story. All of these people stand by the story. Why didn't you testify at this hearing, then? No, there was no eyewitnesses were called at the COI, and that's a decision that was made, I think, for expeditious purposes. I'm not sure exactly what the thinking was, but her testimony was in the record, her testimony that supports John's story. It hasn't changed is my point. So if there were no live witnesses, why don't we stand in the same position as Judge Martin? And why isn't it DeNova? Well, I think that that's a fair way to do it. As I said, I think we win either way. And I also want to point out that in our opening brief, while we didn't argue for DeNova review, we did cite two cases, McIntosh and Shaw, that say credibility determination on a record rather than with live witness is entitled to less deference. So that is not something new that we raised in reply for the first time. So unless you guys have other questions, I'll just close by saying I hope you'll forgive me for speaking from the heart here. These guys are innocent. They are as innocent of this crime as I am or as you are. They were convicted in the name of we the people. It was a travesty and a mistake. They deserve to have their good names restored, and this Court can do it. Thank you very much. I ask that you reverse. Thank you. All right. I want to thank counsels for a well-argued manner and also for presenting us with a very interesting case. This Court is going to take this under advisement, and we are adjourned.